**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALEXIS A. PAUL,** | : | **CIVIL NO. 1:CV-08-2078** |
| **Petitioner,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **RANDAL E. BRITTON,** | : | |
| **Respondent** | : | |

**MEMORANDUM**

In this petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, Alexis Paul

("Paul") challenges his 2004 conviction and sentence in the Court of Common Pleas of

Schuylkill County, Pennsylvania on multiple drug charges and related offenses.  He was

sentenced, following a jury trial, to eleven years and five (5) months to twenty-two (22) years

and ten (10) months in prison.  Paul is confined at the State Correctional Institution at Houtzdale,

Pennsylvania.  The petition is ripe for consideration and, for the reasons that follow, will be

denied.[1]

**I.      Background**

The relevant factual background of this case, as extracted from the December 19, 2007

opinion of the Pennsylvania Superior Court denying Paul's petition filed under the Post

Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, is as follows:

> On the morning of October 3, 2003, members of the Pottsville
> Police department arrived at a two-room apartment located at 825
> West Market Street.  The apartment was leased to Paul and the
> officers were seeking him in response to a domestic disturbance

---

[1] Also pending is a motion recently filed by Paul seeking to amend his habeas petition to raise arguments in support of a reduction of his sentence based upon new laws that he contends reduces penalties for crimes involving crack cocaine.  (Doc. No. 31.)  This motion will be denied without prejudice to any right Paul may have to pursue these issues in the sentencing court.

complaint filed by his wife.  Specifically, Paul's wife claimed that
Paul had displayed a handgun in her presence earlier that morning
in their home also located in Pottsville.

Upon arrival at the Market Street apartment, police officers
identified themselves, banged on the door and requested entry to
the premises.  Through a window in the door, the officers observed
two males inside the apartment; however, no one opened the door
at the officers' repeated requests.  While waiting for the
inhabitants to open the door for them, the officers heard a great
deal of noise emanating from inside the apartment which sounded
like furniture was being moved and rearranged.  A voice from
inside yelled to the officers that there was no one by the name of
Alexis Paul living in that apartment and that if they wanted to enter
the premises they should get a search warrant.  One of the officers
proceeded to City Hall to obtain a search warrant for the premise;
however, while he was filling out the required paperwork, he was
radioed to return to the scene because one of the apartment
residents had given the police permission to enter and search the
premises.

The remaining officers proceeded to enter the apartment and search for the
gun.  Paul opened the door, identified himself to the officers and was
immediately taken into custody and arrested for the domestic violence
incident.  Paul gave the officers consent to search the apartment and told
them that they would not find the alleged gun they claimed he brandished
earlier that day.

While looking for the gun, one of the officers noticed what
appeared to be fresh plaster dust on the bathroom floor.  He looked
up and saw a hole in the ceiling wide enough to conceal a
handgun.  The officer then reached into the hole, and instead of
finding the gun, discovered drugs.  Specifically, he found a plastic
package of what he suspected to be "crack" cocaine and a
separately wrapped plastic package containing a powdery
substance, which he believed was powder cocaine.  Still looking
for the handgun, the same officer proceeded to the kitchen where
he saw that the drip pan had been disassembled under the
refrigerator.  The officer placed his hand under the appliance and
discovered additional drugs located there, including three separate
plastic baggies filled with matter appearing to be marijuana and
two digital scales (one with powder residue).  By the door near the
kitchen sink, officers examined a loose floorboard and, upon closer
inspection, uncovered an additional plastic bag containing

2

marijuana.  Behind the refrigerator two clear baggies of marijuana were also found.  Finally, several hundred dollars and a cellular phone were found on both Paul and the other occupant of the apartment.

As a result of uncovering the drugs in the apartment, the Commonwealth charged Paul with three counts each of possession with intent to deliver (marijuana, crack and powder cocaine) and simple possession, along with possession of drug paraphernalia and criminal conspiracy for possession with intent to deliver to the other male occupant who was 18 years old at the time.  Paul filed a motion to suppress the drug evidence claiming the consent to search the apartment was invalid and challenging the applicability of the concept of constructive possession.  The motion was denied.

After a consolidated jury trial, Paul was convicted on all counts; he was subsequently sentenced to 137-274 months' imprisonment, plus $40,000 in fines and restitution, with 245 days' credit for time served.  The trial court denied Paul's post-sentence motion which sought modification of his sentence and a judgment of acquittal. Paul filed a direct appeal after which this Court affirmed his judgment of sentence, save for vacating the sentence on the three counts of simple possession that should have merged for sentencing purposes with the counts of possession with intent to deliver.  Paul's subsequent petition for allowance of appeal was denied by our Supreme Court.  He then filed a timely pro se PCRA petition; counsel was subsequently appointed and filed an amended petition on Paul's behalf.  A hearing was held on the petition; the PCRA court ultimately denied collateral relief.  Counsel then sought to withdraw, pursuant to **Turner/Finley**,[2] claiming that there is no basis for pursuing an appeal.  The trial court granted counsel's request to withdraw and Paul now appeals pro se.

(Doc. No. 19-11 at 3-6, Commonwealth v. Paul, 1572 MDA 2006 (Pa. Super. Dec. 19, 2007.))[3]

On December 19, 2007, the Pennsylvania Superior Court found no merit to Paul's PCRA

---

[2] Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988); Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988).

[3] Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the electronic case filing system (CM/ECF) rather than the page numbers of the original documents.

3

petition, and affirmed his conviction and sentence.  (Id.)  A petition for allowance of appeal filed

with the Pennsylvania Supreme Court was thereafter denied on July 24, 2008.  (Doc. No. 19-12.)

Paul now files the instant petition wherein he raises the following grounds for relief:[4]

> (1)   Trial court error in failing to grant his motion to suppress the evidence uncovered from the search of the apartment;
>
> (2)   Trial court error in failing to reinstate his direct appeal rights because his appellate counsel was ineffective, was a public defender and was also his trial counsel;
>
> (3)   Denial of meaningful review of PCRA petition because counsel failed to address all issues and abandoned Paul for purposes of appeal;
>
> (4)   Ineffective assistance of trial counsel in (a) failing to move for a mistrial after a reference was made in the presence of the jury to the fact that Paul was in prison and (b) failing to move for a severance of the Defendants for trial;
>
> (5)   Illegal and excessive sentence;
>
> (6)   Denial of fair trial based upon lack of impartial jury; and
>
> (7)   Failure of the Commonwealth to establish the existence of a conspiracy.

(Doc. No. 1, Pet. at 9-11.)

## II.   Standard of Review

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a

prisoner to challenge the "fact or duration" of his confinement.  Preiser v. Rodriguez, 411 U.S.

475, 498-99 (1973).  "[I]t is not the province of a federal habeas court to reexamine state-court

---

[4]  In setting forth the grounds alleged in the petition, the Court notes that although Paul appears to set forth nine (9) separate grounds, he misnumbers his grounds and omits ground seven (7).  In addition, for purposes of simplicity, the Court joins the two ineffective assistance of counsel claims into one ground and will address them as such.

determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-8 (1991). Rather,

federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody

in violation of the constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a);

Estelle, 502 U.S. at 67-8; see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v.

Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

A.      Exhaustion

Before a federal court can review the merits of a state prisoner's habeas petition, it must

determine whether the petition has met the requirements of exhaustion. Relief cannot be granted

unless all available state remedies have been exhausted, or there is an absence of available state

corrective process, or circumstances exist that render such process ineffective to protect the

rights of the applicant. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on

principles of comity in order to ensure that state courts have the initial opportunity to review

federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192

(3d Cir. 2000).

To satisfy the exhaustion requirement, a federal habeas petitioner must have presented

the facts and legal theory associated with each claim through "one complete round of the State's

established appellate review process."[5] O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999);

see also Holloway v. Horn, 355 F.3d 707, 714 (3d Cir. 2004). The exhaustion requirement is

---

[5] Pursuant to Pennsylvania Supreme Court Order 218, effective May 9, 2000, issues presented to the Pennsylvania Superior Court are considered exhausted for the purpose of federal habeas corpus relief under Section 2254. *See In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, No. 218, Judicial Administration Docket No. 1 (May 5, 2000)(per curiam). As such, petitioners are not required to seek review from the Pennsylvania Supreme Court in order to give the Pennsylvania courts a "full opportunity to resolve any constitutional claims." Lambert v. Blackwell, 387 F.3d 210, 233 (3d Cir. 2004).

satisfied if a petitioner's claims are either presented to the state courts directly on appeal from the judgment of sentence, or through a collateral proceeding, such as a PCRA petition. <u>Swanger v. Zimmerman</u>, 750 F.2d 291, 195 (3d Cir. 1984). It is not necessary for a petitioner seeking federal habeas relief to present his federal claims to state courts both on direct appeal and in a PCRA proceeding. <u>Id</u>. However, a petitioner is not deemed to have exhausted the remedies available to him if he has a right under the state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c); <u>Castille v. Peoples</u>, 489 U.S. 346, 350 (1989). The petitioner bears the burden of demonstrating that he has satisfied the exhaustion requirement. <u>Lines v. Larkins</u>, 208 F.3d 153, 159 (3d Cir. 2000)(citing <u>Lambert v. Blackwell</u>, 134 F.3d 506, 513 (3d Cir. 1997)).

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the "procedural default doctrine." <u>Gray v. Netherland</u>, 518 U.S. 152, (1996); <u>Coleman v. Thompson</u>, 501 U.S. 722, 732 (1991); <u>Doctor v. Walters</u>, 96 F.3d 675 (3d Cir. 1996). The purpose of the procedural default rule is to prevent habeas petitioners from avoiding the exhaustion doctrine by defaulting their claims in state court. <u>Coleman</u>, 501 U.S. at 732.

A state's procedural rules are entitled to deference by federal courts; a petitioner's violation of a state procedural rule may constitute an independent and adequate state law ground for denial of federal review of habeas claims under the procedural default doctrine. <u>Id</u>. at 750. Moreover, violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his claims. <u>Glass v. Vaughn</u>, 65 F.3d 13, 15 (3d Cir. 1995), <u>cert. denied</u>, 516 U.S. 1151 (1996). However, the

procedural default doctrine only applies when a state procedural rule is consistently or regularly applied.  Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997)(quoting Johnson v. Mississippi, 486 U.S. 578, 588-89 (1988))[6].   A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) failure to consider the claims will result in a "fundamental miscarriage of justice."  Coleman, 501 U.S. at 750; see also Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001); Lines, 208 F.3d at 166.

The United States Court of Appeals for the Third Circuit has instructed that a petition containing exhausted and unexhausted but procedurally barred claims is not a mixed petition requiring dismissal under Rose v. Lundy, 455 U.S. 509 (1982).  See Wenger, 266 F.3d at 227. Instead, the Court of Appeals held that the district court should review the merits of the exhausted claims, but must not decide the merits of the claims that are barred under the procedural default doctrine.  Id.

### B.    Merits

Once a court has determined that the exhaustion requirement is met, and therefore review of the issues presented in a habeas petition on the merits is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d).  That section states, in relevant part, that exhausted claims that have been adjudicated on the merits by the state courts are subject to review under the standard

---

[6]  See also Doctor, 96 F.3d at 675 (the state rule must be firmly established and regularly followed before it can be considered an independent and adequate state law ground sufficient to foreclose federal court review under the procedural default doctrine).

of whether they are "contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1),

or "resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding." § 2254(d)(2).  The Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA") places the burden on a petitioner to make this

showing.  Williams v. Taylor, 529 U.S. 362 (2000).

In a recently issued opinion, the United States Court of Appeals for the Third Circuit set

forth the following description of the framework for analysis required under § 2254(d):

> Consistent with Supreme Court precedent, we read § 2254(d) to require three
> distinct legal inquiries.  See, e.g., Harrington v. Richter, ___ U.S. ___, 131 S.Ct.
> 770, 785, 178 L.Ed.2d 624 (2011).  The first is whether the state court decision
> was "contrary to ... clearly established Federal law, as determined by the Supreme
> Court of the United States."  § 2254(d)(1).  The second is whether the state court
> decision "involved an unreasonable application of" such law.  § 2254(d)(1).  And
> the third is whether the state court decision "was based on an unreasonable
> determination of the facts in light of the evidence presented" to the state court.
> §2254(d)(2).
>
> The test for § 2254(d)(1)'s "unreasonable application of" clause is as follows:
> "[a]n 'unreasonable application' occurs when a state court 'identifies the correct
> governing legal principle from [the Supreme] Court's decisions but unreasonably
> applies that principle to the facts' of petitioner's case."  Rompilla v. Beard, 545
> U.S. 374, 380, 125 S.Ct. 2456,162 L.Ed.2d 360 (2005)(quoting Wiggins v. Smith,
> 539 U.S. 510, 519, 520, 123 S.Ct. 2527, 156 L.2d.2d 471 (2003)).  For purposes
> of § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent
> review of the legal question, is left with a firm conviction that the state court was
> erroneous."  Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d
> 144 (2003)(internal quotations omitted).  "Under § 2254(d)(1)'s 'unreasonable
> application' clause . . . a federal habeas court may not issue the writ simply
> because that court concludes in its independent judgment that the relevant state-
> court decision applied clearly established federal law erroneously or incorrectly."
> Id. at 75-76, 123 S.Ct. 1166 (quoting Williams v. Taylor, 529 U.S. 362, 411, 120
> S.Ct. 1495, 146 L.Ed.2d 389 (2000)).  Rather, "[t]he state court's application of
> clearly established law must be objectively unreasonable" before a federal court
> may grant the writ.  Andrade, 538 U.S. at 75, 123 S.Ct. 1166.

The test for § 2254(d)(1)'s "contrary to" clause is whether the state court decision "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result."  Brown v. Payton, 544 U.S. 133, 141, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005)(citing Williams, 529 U.S. at 405, 120 S.Ct. 1495, and Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002)).  Of course, a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court's precedent.  See Kane v. Garcia Espitia, 546 U.S. 9, 126 S.Ct. 407, 163 L.Ed.2d 10 (2005).

The test for § 2254(d)(2)'s "unreasonable determination of facts" clause is whether the petition has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record.  See Rice v. Collins, 546 U.S. 333, 338-339, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006)("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'")(quoting § 2254(e)(1))(citing Miller-El v. Dretke, 545 U.S. 231, 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005)); see also Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009)("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence.").  Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication.  Cullen v. Pinholster, ___ U.S. ___, ___, 131 S.Ct. 1388, 1401-03, ___L.Ed.2d___ (2011).

Rountree v. Balicki, 640 F.3d 530, 537-38 (3d Cir. 2011).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if a court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record.  28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979).  Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination.  Porter, 276 F. Supp. 2d at 296; see also Williams, 529 U.S. 362 at 408-09.

Relief can only be granted if the petitioner shows that the state court's decision satisfies one of the three tests as set forth above in <u>Rountree</u>.  With the above legal framework in mind, the Court will now address the claims in the instant habeas petition.

## III.   Analysis

### A.   Procedurally defaulted grounds

In the instant case, Paul has procedurally defaulted the last two (2) grounds raised in his petition.  The arguments that he was denied a fair trial based upon the lack of an impartial jury and that the Commonwealth failed to establish the existence of a conspiracy were never presented in the state courts.  To comply with the exhaustion requirement of 28 U.S.C. § 2254, Paul was required to present all of his federal habeas claims to the Pennsylvania courts in his direct appeal or in his PCRA proceeding.  Because he failed to do so with respect to his last two grounds, this Court must determine whether he has any other available state court remedy through which he can present his unexhausted claims to the Pennsylvania courts.  Under Pennsylvania law, the exclusive remedy to challenge a conviction following direct appeal is through a PCRA proceeding brought in accordance with the Post Conviction Relief Act.  <u>See</u> 42 Pa. Cons. Stat. § 9542.   Under the PCRA, a petitioner may bring a second PCRA petition only as provided for in the PCRA, as follows:

(b)    Time for filing petition. -

(1)    Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i)    the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United

States;

(ii)     the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii)    the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2)      Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

(3)      For purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.

(4)      For purposes of this subchapter, "government officials" shall not include defense counsel, whether appointed or retained.

42 Pa. Cons. Stat. § 9545(b).  The Supreme Court of Pennsylvania has held that the PCRA's

timeliness requirements are mandatory and jurisdictional in nature; thus, no court may properly

disregard or alter them in order to reach the merits of the claims raised in a PCRA petition that is

filed in an untimely manner.  See, e.g., Commonwealth v. Murray, 562 Pa. 1, 5, 753 A.2d 201,

202-03 (2000); Commonwealth v. Fahy, 558 Pa. 3113, 328-29, 737 A.2d 214, 222 (1999).

Under Pennsylvania law, the only potential state remedy that Paul may pursue to raise his

unexhausted claims is a second PCRA petition.  In order for him to be able to file a second

PCRA now, he must allege facts that meet one of the requirements set forth in § 9545(b)(1).

Paul's habeas petition does not allege any of the three exceptions listed in said section.

Consequently, he is precluded from presenting his unexhausted claims in a second PCRA

petition based on the time limitations set forth in the PCRA.  These time limitations are an

11

independent and adequate state law ground sufficient to invoke the procedural default doctrine for purposes of federal court review.  See Lines v. Larkin, 208 F.3d 153, 165 (3d Cir. 2000).

As stated previously, this federal court may not review Paul's defaulted claims unless he demonstrates cause and prejudice for his default or establishes a fundamental miscarriage of justice.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).  To satisfy the cause standard, a petitioner must demonstrate that some objective factor external to the defense impeded his or her efforts to raise the claim in state court.  McCleskey v. Zant, 499 U.S. at 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986).  To show prejudice, a petitioner must demonstrate that the error worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions, not merely that the error created a "possibility of prejudice."  Carrier, 477 U.S. at 494.   Paul neither argues cause and prejudice nor the existence of a fundamental miscarriage of justice in his petition.  Consequently, he is not entitled to habeas corpus relief with respect to last two (2) grounds as detailed above.

**B.      Trial Court's failure to grant motion to suppress**

Paul challenges the trial court's denial of his motion to suppress the evidence uncovered from the search of the Market Street apartment.  He claims that there was no legal consent to search, the search was not incident to arrest, coercion was involved, and that his co-defendant did not have the authority to consent to the search.  This issue was not pursued by Paul in his direct appeal.  However, he did raise this issue in his PCRA petition.  In addressing this issue on appeal from the denial of the PCRA petition by the Schuylkill County Court of Common Pleas, the Pennsylvania Superior Court found that said issue was not cognizable under the PCRA and, because it raises a claim of trial court error, is one that should have been raised on direct appeal.

12

See 42 Pa. C.S.A. §§ 9542-43.  (Doc. No. 19-11, 12/19/07 Pa. Super. Op.)  Regardless, the

appellate court found that even if the claim could be addressed on the merits, Paul would not be

entitled to any relief.  The record revealed that he voluntarily consented to the officers' search of

the apartment where he lived with his co-defendant, he identified himself to the officers upon

opening the door for them, and he told them they could search the premises and would not find a

gun.  Further, the record also clearly established that Paul was able to give valid consent to

search in that his name was on the lease, he referred to the apartment as "his" and the unit

contained his personal effects.  In addition, the appellate court found that based on the record,

the trial court appropriately chose to credit the testimony of Paul's arresting officers at both trial

and the PCRA hearing that no coercion was utilized in obtaining Paul's consent to search.

   The Supreme Court has held that "where the State has provided an opportunity for full

and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal

habeas corpus relief on the ground the evidence obtained in an unconstitutional search or seizure

was introduced at his trial."  Stone v. Powell, 428 U.S. 465, 494 (1976)(footnote omitted).  "The

rationale for the Court's ruling was that , in the context of a federal habeas corpus challenge to a

state court conviction, 'the contribution of the exclusionary rule, if any, to the effectuation of the

Fourth Amendment is minimal and the substantial societal costs of the application of the rule

persist with special force.'"  United States v. Scarborough, 777 F.2d 175, 182 (4th Cir.

1985)(quoting Stone, 428 U.S. at 494-95).  Therefore, in a habeas proceeding, when a federal

district court is faced with Fourth Amendment claims, it should inquire as to whether or not the

   petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claim

in the state court.  See Deputy v. Taylor, 19 F.3d 1485, 1490 (3d Cir. 1994)(rejecting a Fourth

Amendment claim because petitioner had a full and fair opportunity to litigate claim in state court, and noting that under <u>Stone</u>, "[e]ven otherwise potentially meritorious Fourth Amendment claims are barred on habeas when the petitioner had a full and fair opportunity to litigate them.").

It cannot be disputed that Paul had a full and fair opportunity to litigate his claim in the state court. He was able to present and argue his Fourth Amendment claims in his motion to suppress during a pre-trial hearing conducted in the Schuylkill County Court of Common Pleas on March 23, 2004. (Doc. No. 21-5, 3/23/04 Hr'g Tr.) Moreover, Paul pursued this issue in his PCRA petition before the Schuylkill County Court of Common Pleas where he was afforded an evidentiary hearing (Doc. No. 34, PCRA Tr.), as well as before the Pennsylvania Superior Court when he appealed the denial of his PCRA petition. (Doc. No. 21-4, 12/19/07 Pa. Super. Op.) As such, this claim is not cognizable in the instant habeas action.

C.      **Ineffectiveness of counsel**

Paul also raises grounds of ineffective assistance of counsel in his petition. He first claims that trial counsel was ineffective in failing to move for a mistrial after an employee of the Public Defender's Office and an employee of the Clerk of Courts' office made reference, in the presence of the jury, to the fact that Paul was in prison. He also maintains that trial counsel was ineffective when he failed to move for a severance of his trial from that of his co-defendant's trial.

An ineffective assistance of counsel claim is governed by the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), which constitutes "clearly established Federal law" for AEDPA purposes. <u>Williams v. Taylor</u>, 529 U.S. 362, 391 (2000); <u>Outten v. Kearney</u>, 464 F.3d 401, 414 (3d Cir. 2006); <u>Rainey v. Varner</u>, 603 F.3d 189, 197 (3d Cir. 2010). A

habeas petitioner asserting a claim under Strickland must establish two elements.  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.  In evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689.  Thus, counsel's performance will be deemed deficient only if it "fell below an objective standard of reasonableness."  Id. at 688.  The question ultimately is "whether, in light of all the circumstances, the [challenged] acts or omissions were outside the wide range of professionally competent assistance."  Id. at 690.  Reasonableness of counsel's challenged conduct on the facts of the particular case are viewed as of the time of counsel's conduct.  Id. at 689-90.

"Second, the [petitioner] must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable."  Id. at 687.  In determining prejudice, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695; see also Harrington v. Richter, ___, U.S. __, ___-___, 131 S.Ct. 770, 791-92, 178 L.Ed.2d 624 (2011)(the question is "whether it is 'reasonably likely' the result would have been different").  Because failure to establish either prong results in denial of a defendant's claim, a court may begin its analysis with either prong of the test.  United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002).

This Court must determine whether the Pennsylvania state court applied a rule that contradicts the United States Supreme Court's standard set forth in Strickland for evaluating an

ineffective assistance of counsel claim or was confronted with a set of facts materially

indistinguishable from a decision of the United States Supreme Court but reached a different

result.

In the instant matter, the Pennsylvania Superior Court used the following Pennsylvania

standard in analyzing Petitioner's ineffective assistance of counsel claims on appeal from the

denial of his PCRA petition:

> To prevail on a claim of ineffectiveness, an appellant must show that his contention has
> arguable merit, that trial counsel's course of action had no reasonable basis designed to
> serve his interests, and that counsel's conduct prejudiced him.

> Commonwealth v. Pirela, 580 A.2d 848, 850-51 (Pa. Super. 1990).

(Doc. 19-11, Pa. Super. Op. at 8, n. 3.)

The above standard is basically identical to the Strickland test.  Under Pennsylvania state

jurisprudence, a three-prong test is applied to ineffective assistance of counsel claims, but is, in

substance, identical to the Strickland test.  Johnson, 771 A.2d at 757.  While the issue of merit of

an underlying claim is not a specific factor under Strickland, the United States Court of Appeals

for the Third Circuit has held that requiring a showing that the underlying claim has merit is not

in conflict with Strickland.  Rompilla v. Horn, 355 F.3d 233, 248 n. 9 (3d Cir. 2004), reversed on

other grounds, Rompilla v. Beard, 545 U.S. 374 (2005).  Rather, it is considered to be a

determinative factor in the "deficient performance" prong of the Strickland analysis.  See Werts,

228 F.3d at 203-04.  The Third Circuit Court of Appeals has held that Pennsylvania's test for

assessing ineffective assistance of counsel claims is not contrary to Strickland.  Jacobs v. Horn,

395 F.3d 92, 107 n. 9 (3d Cir. 2005); Werts, 228 F.3d at 204.  In the instant case, the court finds

that the Pennsylvania court neither applied a rule of law that contradicts Strickland, nor reached

16

a contrary result after being confronted with facts materially indistinguishable from <u>Strickland</u>.

This court has determined that the Pennsylvania state court identified the correct governing legal principle with respect to Petitioner's ineffective assistance of counsel claims.  As such, the relevant inquiry becomes whether the state court's decision involved an unreasonable application of <u>Strickland</u> or an unreasonable determination of facts in light of the record evidence at the time of the state court's adjudication.  The Court will now address each of Paul's ineffectiveness claims.

### 1.    Failure to move for mistrial

Paul claims that trial counsel was ineffective for failing to request a mistrial after a Public Defender Office employee and an employee of the Clerks Office made reference, in the presence of the jury, to the fact that Paul was in prison.  It appears from the record that said individuals had a conversation about whether Paul had been give a meal that day, and whether he eats the same food as the warden.  When the conversation took place, the attorneys for the parties and the trial judge were out of the courtroom.  Paul alleges that this comment prejudiced him in the eyes of the jury.

On PCRA review, the Schuylkill County Common Pleas Court held that this claim was meritless.  More specifically, following the PCRA hearing, the court did not believe that the jury overheard the conversation or any mention of a warden and found that even if they did, the evidence in the case was sufficient for the jury to convict Paul beyond a reasonable doubt and to support the jury's verdict.  (Doc. No. 21-4 at 24, 8/1/06 PCRA Ct. Op.)  In affirming the the PCRA court's holding on appeal, the Superior Court concluded that Paul failed to show whether any of the jurors actually overhead the comment and, if they did, how it prejudiced his right to a

fair trial.  The PCRA court also relied upon the facts that "trial counsel testified at the PCRA hearing that he polled everyone involved in and privy to this improper discussion and they all believed the jury did not hear the comments and were certain that the word 'prison' was never even used during the conversation."  (Doc. No. 34 at 50-54, 85, 87.)  The two employees involved in the discussion also testified at the hearing, stating that they never used the word "prison" during their conversation. (Id. at 70; Doc. No. 19-11.)

Upon reviewing the record, the state courts applied law consistent with Strickland and their findings were not contrary to or an unreasonable application of clearly established federal law, or based upon an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d)(1)-(2). Based upon the record, there was no concern that the trial's fairness had been compromised, as there was no evidence that the jurors even overheard the comments made and, even if they did, that any prejudice to a fair trial occurred in light of the evidence supporting the jury's verdict. For these reasons, this Court will not disturb the state court's ruling, and Paul's claim on ineffective assistance of counsel will be denied.

### 2.    Failure to move for severance of co-defendant's trial

Paul also claims that trial counsel was ineffective when he failed to move for the severance of his case from that of his co-defendant.  Specifically, Paul contends that his co-defendant was charged with additional offenses that were not part of the case against Paul and that in hearing this evidence, the jury may have been influenced by it and held it against him as well.  He further contends that counsel did not seek a limiting instruction to the jury with respect to this issue.  (Doc. No. 2 at 29-30.)

The United States Supreme Court has instructed that there is a preference in the federal

system for joint trials of defendants who are indicted together as it promotes efficiency and

serves the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

Zafiro v. United States, 506 U.S. 534, 537 (1993).  Thus, improper joinder does not, in itself,

violate the Constitution.  Rather, misjoinder would rise to the level of a constitutional violation

only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair

trial.  United States v. Lane, 474 U.S. 438, 446 n. 8 (1986).  With respect to joinder of

defendants, the Supreme Court has further instructed:

> We believe that, when defendants properly have been joined under
> Rule 8(b), a district court should grant a severance under Rule 14
> only if there is a serious risk that a joint trial would compromise a
> specific trial right of one of the defendants, or prevent the jury
> from making a reliable judgment about guilt or innocence.  Such a
> risk might occur when evidence that the jury should not consider
> against a defendant and that would not be admissible if a defendant
> were tried alone is admitted against a codefendant.  For example,
> evidence of a codefendant's wrongdoing in some circumstances
> erroneously could lead a jury to conclude that a defendant was
> guilty.  When many defendants are tried together in a complex
> case and they have markedly different degrees of culpability, this
> risk of prejudice is heightened.  Evidence that is probative of a
> defendant's guilt but technically admissible only against a
> codefendant also might present a risk of prejudice. Conversely, a
> defendant might suffer prejudice if essential exculpatory evidence
> that would be available to a defendant tried alone were unavailable
> in a joint trial.  When the risk of prejudice is high, a district court
> is more likely to determine that separate trials are necessary, but, ...
> less drastic measures, such as limiting instructions, often will
> suffice to cure any risk of prejudice.

Zafiro, 506 U.S. at 539 (internal citations omitted).

Both the PCRA court and the Superior Court agreed that trial counsel had a reasonable

basis for not requesting a severance.  At the PCRA hearing, testimony was given by trial counsel

that he had consulted with Paul regarding the issue of severing the trial, and that Paul stated he

did not wish to sever the trial from that of his co-defendant.  Paul hoped his co-defendant would

testify that the drugs were his and not Paul's, thereby supporting Paul's defense that he was

unaware of the presence of drugs in the apartment.  (Doc. No. 34 at 49.)  The PCRA court found

counsel's testimony to support a legitimate trial strategy in light of counsel's defense that it was

the co-defendant's drugs and not Paul's, and that Paul had no knowledge of the presence of

drugs in the apartment.  While the jury did not find this testimony credible in light of all the

testimony presented, particularly in light of Paul's constructive possession of the contraband, the

Court is required to examine the reasonableness of counsel's actions at the time they occurred.

(Id.)

The Superior Court agreed with the PCRA court in finding a reasonable strategic basis to

exist for counsel to have preferred to have a joint trial where the testimony of Paul's co-

defendant may have potentially supported Paul's defense.  As such, the Superior Court was

unable to find trial counsel ineffective for failing to request a severance.  (Doc. No. 19-11,

12/19/07 Pa. Super. Op. at 10-11.)

Neither state court found that Paul had demonstrated prejudice resulting from his

counsel's failure to sever as he did not demonstrate that having his own trial would have resulted

in a different verdict than the one rendered.  In addition, a reasonable strategic basis was found

to exist for counsel's decision, as well as overwhelming testimony presented at trial to support

the verdict against Paul.  Paul has failed to demonstrate that the state courts' decisions are

contrary to, or an unreasonable application of, clearly established federal law as determined by

the Supreme Court of the United States. Consequently, Paul is not entitled to relief with respect

to this ineffective assistance of counsel claim.

### D.        Trial Court Error in Failing to Reinstate Direct Appeal Rights

Another ground raised in the instant habeas petition is that Paul's direct appeal rights should have been reinstated due to the ineffectiveness of his trial/appellate counsel, a public defender who was one in the same person.  He specifically contends that the trial court should have granted his numerous requests for the appointment of new counsel and reinstated his direct appeal rights.  Without unnecessary elaboration, the Court finds that Paul is not entitled to have his appellate rights reinstated based upon this Court's finding that his ineffectiveness claims are without merit and, as such, any error on the part of the state court cannot be found based upon meritless claims of ineffectiveness.

### E.        Illegal and Excessive Sentence

In the pending habeas petition Paul also contends that the trial court abused its discretion by imposing an illegal and excessive sentence.  He claims that the separate, consecutive sentences on Count 2 (PWID Crack Cocaine) and Count 3 (PWID Powder Cocaine) constitute an illegal sentence.[7]  Specifically, he maintains that by doing so, the trial court subjected him to double jeopardy because the substances involved in each count were cocaine, and therefore should have been treated as a single act – possession with intent to deliver cocaine.  He argues that the sentences for Counts 2 and 3 should merge because they constitute the same crime.[8]

Paul further challenges the discretionary aspects of the sentence imposed.  In his opinion,

---

[7]  As previously set forth, Paul's sentence included 60 to 120 months in prison on the Possession with Intent to Deliver crack cocaine charge, as well as a consecutive 60-120 months in prison on the Possession with Intent to Deliver Powder Cocaine charge.

[8]  While unclear, it also appears that Paul attempts to challenge the testimony provided at trial by Officer Wiederhold, claiming that he should not have been permitted to testify as an expert. Because this claim was never presented to the state courts, it will not be addressed herein.

the trial court abused its discretion when it failed to state sufficient reasons on the record for its aggravated range sentences with respect to Counts 1, 2 and 3 (PWID Marijuana, Crack Cocaine and Powder Cocaine).  He also argues that the sentence imposed on these counts was excessive.

On direct appeal to the Pennsylvania Superior Court, Paul raised the above challenges to his sentence, as well as the claim that the trial court erred in imposing a separate sentence for counts 4, 5 and 6 (the Simple Possession Counts), claiming that said counts merged for sentencing purposes with Counts 1, 2 and 3 (the PWID counts).  The Superior Court addressed each of the sentencing claims Paul raises in the instant habeas petition and found them to be without merit.  The Superior Court also found that the simple possession counts merged for purposes of sentencing with the PWID counts, as the former were lesser included offenses of the latter.[9]  The Commonwealth conceded that the trial court's imposition of additional punishments for the simple possession counts was improper and, as a result, the Superior Court ordered that the sentences for the simple possession charges be vacated. This, however, did not effect Paul's overall aggregate prison term since the sentences that had been imposed by the trial court on the simple possession charges were concurrent to the PWID sentences.

In addressing Paul's claim that the separate, consecutive sentences imposed on Counts 2 (PWID crack cocaine) and 3 (PWID powder cocaine) violate double jeopardy and therefore are illegal, the Superior Court found the law clear that both powder cocaine and crack cocaine fall within the prohibition of Schedule II substances under Pennsylvania statutory law.[10]  (Doc. No.

---

[9]  Paul does not raise this claim in his habeas petition since he was successful in the state court.

[10]  See Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780-104(2)(i)(4).

19-6 at 4, 5/13/05 Pa. Super. Op.)  Paul was charged with possession with intent to deliver both powder cocaine and crack cocaine.  Evidence was offered at trial establishing the varying preparation, distribution and use of each of these drugs and police testimony was offered establishing that both drugs were found at Paul's residence in separate packaging.  (Id.)  Pursuant to state law, a PWID charge is permitted when an individual is selling powder cocaine of any type.  Likewise, the law further allows a PWID charge in the event an individual is selling crack cocaine.  The jury found that Paul possessed each of these substances (powder cocaine and crack cocaine) with the intent to sell them, and thus found him guilty of both offenses.  For these reasons, the Superior Court found that the trial judge was correct in imposing a sentence for each conviction.  (Id. at 5.)   Additionally, any claim by Paul that the sentences for Counts 2 and 3 should merge because they constitute the same crime were found to be without merit.  With respect to these offenses, Paul was charged with two distinct crimes/two separate acts.  Citing to state law, because proof in support of one of these crimes did not establish proof of the other, the Superior Court found that merger was inappropriate.  (Id.)

As the state court's analysis reveals, Paul's claims challenging the legality of his sentence address only the application of Pennsylvania sentencing law, and as such are not cognizable by a federal court in a habeas proceeding.  Generally, a state court's sentencing decision and claims arising out of that decision are not cognizable in a federal habeas proceeding, unless the sentencing constitutes cruel and unusual punishment under the Eighth Amendment, exceeds the statutory limits, or is arbitrary or otherwise in violaton of due process.[11]  See Champman v. United

---

[11]  The trial court deviated from the standard range in imposing the maximum aggravate range in Counts 1, 2 and 3.  However, the trial court noted in its opinion addressing Paul's pre-trial motions that the sentence is within the guideline range even though by law the court could have sentenced beyond the aggravated range.  The sentence imposed did not exceed the statutory limits nor was it found to be manifestly excessive.  (Doc. No. 19-2, Ex. B at 4, CCP Schuylkill County

States, 500 U.S. 453, 465 (1991); Estelle v. McGuire, 502 U.S. 62 (1991); Laboy v. Carroll, 437

F. Supp. 2d 260, 263 (D.Del. 2006).  A federal court may review a habeas petition filed by a state

prisoner only "on the ground that he is in custody in violation of the Constitution or laws or

treaties of the United States."  28 U.S.C. § 2254(a).  Claims asserting violations of state law, or

challenging a state court's interpretation of state law, are not cognizable on federal habeas review.

Jones v. Supt. Rahway State Prison, 725 F.2d 40, 43 (3d Cir. 1984)(considering claim challenging

sentence disparity between codefendants).  See also Estelle, 502 U.S. at 67-68(it is not province

of the federal court to reexamine a state court's determination of state law).

Accordingly, the state courts, carefully reviewing the facts of this case and the state legal

requirements, imposed Paul's sentence within the broad limits established by the Constitution.

Paul's objections to the legality of the sentence fail to raise a cognizable claim under which this

Court may grant federal habeas relief.

We next examine Paul's challenge to the discretionary aspects of his sentence.

Specifically, he maintains that the trial court abused its discretion when it failed to state sufficient

reasons on the record for its aggravated range sentences with respect to Counts 1, 2 and 3 (the

PWID counts).  He further asserts that the sentences imposed with respect to these counts were

manifestly excessive.

As previously stated, with respect to sentence length, the state court's sentencing

discretion is unreviewable by a federal court provided that the sentence lies within the statutory

guidelines, it is not based upon arbitrary considerations, and the defendants's constitutional rights

were not violated.  See Estelle, 502 U.S. at 67-68(explaining that federal habeas courts are not

---

Order dated 8/6/04.)

permitted to review questions of state law); <u>Wainwright v. Skyes</u>, 433 U.S. 72, 81

(1977)(indicating that questions of state substantive law are not cognizable on federal habeas

review).  Otherwise, a habeas petition cannot be used to challenge sentence length since

allegations that a state tribunal abused its discretion under state law do not constitute an issue of

federal constitutional dimension.  <u>See</u> <u>Townsend v. Burke</u>, 334 U.S. 736, 741 (1948)(stating that

when a state "sentence [is] within the limits set by the statute, its severity would not be grounds

for [habeas] relief").

This issue was raised by Paul in his post-sentence motion, and thereafter reviewed and

affirmed on appeal by the Pennsylvania Superior Court.  (Doc. No. 19-6.)  The principle of

comity suggests that this Court defer to the Superior Court's review and affirmation of the

sentence with respect to Paul's challenge to the discretionary aspects of his sentence.  The

Superior Court found no abuse of discretion on the part of the trial court in imposing sentence on

Counts 1, 2 and 3.  The trial court was well aware of the fact that the sentences imposed were in

the aggravated range, but thoroughly noted its reasons on the record for doing so.  Specifically,

the trial court noted Paul's failure to respond to rehabilitation efforts despite his numerous prior

convictions, programs and prison sentences.  The court pointed to his long history of crime since

his juvenile days through the time of the instant offenses, as well as the fact that he had completed

incarceration only a few weeks before coming to Pottsville and setting up a drug shop in

Schuylkill County.  (Doc. No. 12-12 at 20, Sentencing Tr.)   In addition, although his wife had a

nice residence in Pottsville, Paul leased an apartment nearby for the purpose of setting up a "drug

store" to supply the town with powder cocaine, crack and marijuana.  (<u>Id</u>. at 21.)  On the record

the court further remarked that despite the fact Paul was a bright, articulate and talented

individual, he continued to choose a life of crime and was smart enough to know better. (Id.) The court also commented on how Paul was the father of three children yet repeatedly chose to put them in harms way. (Id.) The court also did not find Paul's testimony credible. Based upon the foregoing, the Superior Court found no abuse of discretion on the part of the trial court in imposing Paul's sentence on Counts 1, 2 and 3. This Court finds that the Superior Court reasonably concluded that the sentence imposed by the trial court was not illegally excessive and that there was no abuse of discretion. As such, Paul's challenges to the sentence imposed will be denied.

**F.      Denial of meaningful review of PCRA**

Paul also challenges the review he received in his PCRA proceedings. Specifically, he claims that PCRA counsel failed to address all of the issues he wanted him to and that counsel abandoned him for purposes of appeal of his PCRA to the Superior Court. He claims that following the trial court's denial of his amended PCRA, his counsel sought to withdraw pursuant to Turner/Finley claiming there existed no basis to appeal.[12] Paul contends that the trial court improperly adopted counsel's "no merit" letter in justifying its decision to deny his PCRA petition.

With respect to this issue, on appeal to the Pennsylvania Superior Court from denial of his amended PCRA petition, the Superior Court conducted an exhaustive review of the record and found that counsel had properly petitioned to withdraw as counsel pursuant to the dictates of Turner/Finley. (Doc. No. 19-11 at 7, 12/19/07 Pa. Super. Op.) In his "no-merit" letter, counsel

---

[12] See Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988); Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988).

described the nature and extent of his review of Paul's case, listed the issues Paul wished to have reviewed on appeal, and provided an explanation of why those issues lacked merit in accordance with state law.  As such, this Court is unable to find that Paul's pending habeas challenge to the "no-merit" letter is viable.

Further, while Paul argues that the trial court only granted PCRA counsel's motion for leave to withdraw to justify its decision to deny his amended PCRA petition, the Superior Court rejected this argument.   Specifically, the Superior Court found that because the trial court had written an opinion pursuant to Pa.R.A.P. 1925(a) addressing the claims Paul raised on appeal, any such argument that the trial court used the withdrawal letter to justify their denial of the PCRA was clearly without merit.  (Id.)  For these reasons, this habeas ground will also be denied.

## IV.   Conclusion

For all of the foregoing reasons, the Court will issue an appropriate order denying the pending petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken frm a final order in a proceeding under § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322 (2003).  In the instant matter, jurists of reason would not find the disposition of Petitioner's case debatable.

An appropriate order follows.

27

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **ALEXIS A. PAUL,** | : | **CIVIL NO. 1:CV-08-2078** |
| **Petitioner,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **RANDAL E. BRITTON,** | : | |
| **Respondent** | : | |

## ORDER

**AND NOW**, this 13th  day of August, 2012, upon consideration of the petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254, **IT IS HEREBY ORDERED AS FOLLOWS:**

1.      The petition for writ of habeas corpus is **denied**.

2.      Petitioner's motion to amend (Doc. No. 31) is **denied without prejudice.**

3.      A certificate of appealability is denied.

4.      The Clerk of Court is directed to **close this case**.


S/ Yvette Kane
YVETTE KANE, Chief Judge
Middle District of Pennsylvania

28